SRD/HMG USAO: 2016R00312



# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Number: JFM-16-0209 |
| v. | Conspiracy to Commit Mail Fraud<br>(18 U.S.C. § 1349) |
| BRANDON JOHNSTON,<br>Defendant. | UNDER SEAL |

SEALED

## INFORMATION

### COUNT ONE

The United States Attorney for the District of Maryland charges that:

### INTRODUCTION

At all times relevant to this Information:

1. Defendant **BRANDON JOHNSTON** resided in Catonsville, Maryland.

2. Midway Industries, LLC ("Midway") was the name of a telemarketing company incorporated in the State of Maryland that purported to sell light bulbs and cleaning supplies to companies throughout the United States.

### THE CONSPIRACY AND THE SCHEME AND ARTIFICE TO DEFRAUD

3. From in or about 2010 through in or about July 2014, in the District of Maryland and elsewhere, the defendant,

**BRANDON JOHNSTON,**

did knowingly and willfully conspire, confederate, and agree with others known and unknown ("the Midway co-conspirators") to commit mail fraud, that is to knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property from

various businesses, by means of materially false and fraudulent pretenses, representations, and promises regarding light bulb and cleaning supply orders ("the scheme to defraud"), and for the purpose of executing and attempting to execute such scheme to defraud, did knowingly cause to be delivered by mail and by any private and commercial interstate carrier any matter and thing, according to the direction thereon, in violation of 18 U.S.C. § 1341.

## OBJECT OF THE CONSPIRACY

4. It was the object of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators obtained money from thousands of victim businesses by deceiving the businesses' authorized representatives into paying exorbitant prices for light bulbs and cleaning supplies, as well as paying for products that the businesses never ordered.

## MANNER AND MEANS

Shell Entities

5. It was part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators created and caused to be created various shell entities with no legitimate purpose, including Commercial Industries, LLC, Environmental Industries, LLC, Essex Industries, LLC, Hansen Supply, LLC, Johnson Distributing, LLC, Mid-Atlantic Industries, LLC, National, LLC, Standard Industries, LLC, State Power and Electric, LLC, State Power and Lighting, LLC (collectively the "Shell Entities").

6. It was further part of the conspiracy and scheme to defraud that, from in or about April 2010 through in or about July 2014, **JOHNSTON** and the Midway co-conspirators made and caused to be made phone calls to victim businesses purportedly on behalf of various individual Shell Entities.

7.      It was further part of the conspiracy and scheme to defraud that in those phone calls to victim businesses, **JOHNSTON** and the Midway co-conspirators misled victim businesses by concealing that Midway Industries, LLC and the Shell Entities (collectively "Midway") were being jointly operated by the Midway co-conspirators from the same location in Reisterstown, Maryland, as well as locations in Del Ray Beach and West Palm Beach, Florida. They further used Post Office boxes throughout Maryland for each of the Shell Entities to cause the victim businesses to believe that each Shell Entity was a different company, and to conceal Midway's true location from the victim businesses.

8.      It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators avoided calling businesses located in Maryland and Florida for the purpose of concealing Midway's true location and avoiding in person contact with victim businesses.

False Representations Made to Victim Businesses

9.      It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators used commercially available "lead sheets" to make "cold calls" to representatives of the victim businesses with authority to place an order ("authorized representatives"). The authorized representatives of the victim businesses were often maintenance employees.

10.     It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators made false and fraudulent representations to authorized representatives on cold calls, including:

   a. Misrepresenting that the victim business had an existing business relationship with Midway;

b. Misrepresenting that the purpose of the phone call was to provide an updated phone number, or to send catalogues to the victim business; and

c. Misrepresenting that Midway would send a "half box" of light bulbs along with the catalog, when in truth and fact, there were never any half boxes. The "half box" was a deceptive technique used to understate the volume and price of shipments, and disguise various unwanted future shipments. Moreover, Midway did not send catalogs;

11. It was further part of the conspiracy and scheme to defraud that, on initial calls, **JOHNSTON** and the Midway co-conspirators regularly promised Wal-Mart and Bass Pro Shops gift cards to authorized representatives in order to induce them to place initial orders or to provide to Midway additional company information or personal information, like the authorized representatives' home address and personal phone number.

12. It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators avoided divulging the price of any products to victim businesses by engaging in a practice called the "price blow-off," in which they falsely stated that they did not have the price in front of them, but that it would be at the corporate discount. In truth and fact, Midway did not offer a corporate discount.

13. It was further part of the conspiracy and scheme to defraud that, once a victim company paid a Midway invoice, **JOHNSTON** and the Midway co-conspirators placed subsequent sales calls to the victim businesses.

14. It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators made false and fraudulent representations to authorized representatives at the victim businesses on subsequent calls, including:

a. Misrepresenting that the "completion" or "balance" of the victim business' order had recently been shipped, despite no order having yet been made by the victim business, and no actual shipment having yet been sent; and

b. Misrepresenting that the victim business' "regular seasonal order" had recently been shipped, despite no order having yet been made by the victim business, and no actual shipment having yet been sent.

15. It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators would regularly call authorized representatives repeating the above-referenced false representations so long as the victim business continued paying Midway's invoices.

16. It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators called authorized representatives under the guise of different Shell Entities in order to repeat the process using a product other than light bulbs, often cleaning supplies.

Price Markups and Collections

17. It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators placed and caused to be placed orders for light bulbs and cleaning supplies with a company located in New Jersey identified as Company A. At the Midway co-conspirators' instruction, Company A shipped light bulbs and cleaning supplies to the victim businesses without an invoice, and sent its invoices directly to Midway.

18. It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators sent and caused to be sent invoices to the billing departments of the victim businesses, which were often different departments from those of the authorized representatives, for amounts greatly inflated from the amounts charged by Company A.

19. It was further part of the conspiracy and scheme to defraud that **JOHNSTON** and the Midway co-conspirators sent and caused to be sent invoices to the victim businesses that were regularly 900% above the prices Midway paid Company A for the same light bulbs and

cleaning supplies. After victim businesses had paid one invoice, the Midway co-conspirators sent and caused to be sent invoices to the victim businesses that were sometimes greater than 8,000% above the prices Midway paid Company A for the same light bulbs and cleaning supplies. The Midway co-conspirators set the markup to extract as much money as possible without the victim businesses becoming aware of the fraud.

20. It was further part of the conspiracy and scheme to defraud that, when victim businesses did not remit payment, the Collections Department at Midway repeatedly called and made demands on victim businesses in order to force them to pay the overly-inflated invoices sent to them by Midway.

21. It was further part of the conspiracy and scheme to defraud that Midway co-conspirators in the Collections Department would insist to victim businesses that the fact the authorized representative had provided his home address for the purposes of receiving a gift card indicated that the authorized representative had actually placed an order with Midway.

22. It was further part of the conspiracy and scheme to defraud that, in the event victims threatened to contact law enforcement or the Better Business Bureau, the Midway co-conspirators offered to take back a product at either a discounted rate or for a re-stocking fee that was still substantially greater than the cost of the products purchased from Company A.

Additional Fraudulent Techniques

23. It was further part of the conspiracy and scheme to defraud that, on multiple occasions, when the authorized representative at a victim company could not be reached by phone, **JOHNSTON** and the Midway co-conspirators would "just ship," or "J/S," a reference to the practice of causing a product and inflated invoice to be sent to a victim business, even though the victim business had placed no order with Midway. This practice was also commonly referred to as "taking a shot."

24. It was further part of the conspiracy and scheme to defraud that, on multiple occasions, when **JOHNSTON** and the Midway co-conspirators learned that the authorized representative at a victim company had quit, been fired, or even passed away, they caused a product and inflated invoice to be sent to the victim company knowing that the company would be unable to dispute the validity of the order. This practice was referred to by the Midway co-conspirators as a "down the road."

25. It was further part of the conspiracy and scheme to defraud that between 2010 and 2014, Midway sent fraudulent invoices to victim companies for more than $100,000,000, and received more than $50,000,000 in payments on those invoices.

## EXECUTION OF THE SCHEME TO DEFRAUD

26. In furtherance of the conspiracy and for the purpose of executing the scheme to defraud, **JOHNSTON** and the Midway co-conspirators, in the District of Maryland and elsewhere, did knowingly cause to be delivered by mail and by any private and commercial interstate carrier any matter and thing, according to the direction thereon, including:

| DATE | DESCRIPTION |
| --- | --- |
| 10/7/2013 | Invoice from Midway Industries in Maryland mailed to Victim Business #1 in Oklahoma City, Oklahoma, for $799.45 in light bulbs ordered from Company A with a cost of $49.20. |
| 12/2/2013 | Invoice from National, LLC in Maryland mailed to Victim Business #2 in New York NY, for $1,398.20 in cleaner ordered from Company A, with a cost of $47.41. |
| 5/12/2014 | Invoice from Midway Industries in Maryland mailed to Victim Business #3 in Richmond, Virginia for $1,498.10 in light bulbs ordered from Company A with a cost of $87.07. |

18 U.S.C. § 1349.

## FORFEITURE ALLEGATIONS

1. The allegations contained in Count One of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

2. Upon conviction of the offense set forth in Count One, the defendant,

**BRANDON JOHNSTON**

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violations, including but not limited to a Money Judgment in the amount of at least $58,656,369 in U.S. Currency.

3. If any of the property described above, as a result of any act or omission of the defendant,

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 982(a)(2).

Date: 5/2/2016

ROD J. ROSENSTEIN
United States Attorney
District of Maryland